# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DENNIS BACA,

      Plaintiff,

vs.                                                          Civil No. 00-870 BB/WWD

LARRY G. MASSANARI,[1]
Acting Commissioner of Social Security,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for Rehearing, filed January 17, 2001 (**Doc. 9**).[2]  The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff is currently age 41 and alleges a disability which commenced September 20, 1995,[3] due to chest pain, and problems with his right hand, lower back, right knee, and neck.  Mr. Baca has worked in the past in construction and as a lawn or yard worker.  Also at issue here is the effect

---

    [1] President Bush designated Larry G. Massanari as Acting Commissioner of Social Security, effective March 29, 2001**.**  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted for Kenneth S. Apfel as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    [2] The motion package was actually filed with the Court on March 27, 2001, although the motion was served on January 17, 2001.

    [3] At the hearing, Plaintiff changed his date of onset to June 27, 1997 to reflect the filing of his last application.  Tr. at 260.

of substance abuse on Plaintiff's impairments.   See 20 C.F.R. § 416.935.

2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application, concluding that Mr. Baca is not disabled under the "grids". See 20 C.F.R. Pt.404,Subpt P, App.2, Rule 202.17.  The Appeals Council denied Mr. Baca's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ's listing of impairments is incomplete, and is contrary to the evidence and the law; and (2) the ALJ's finding that Mr. Baca's substance abuse is material to a finding of disability is contrary to the evidence and the law.

4.  The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).   Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (42 U.S.C. § 1382c(a)(3)(A)).

5.  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §416.920.   At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity

("RFC") to do work in the national economy other than past relevant work.  Thompson at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. § 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

6. Mr. Baca dropped out of school where he was in special education classes at age 15 or 16 after his mother died.  Tr. at 268, 270.  He was making near-failing grades in school, and started sniffing solvent and drinking alcohol after he dropped out.  Id.

7. Plaintiff has a long history of substance abuse, including using alcohol, paint solvent and marijuana, which has left his memory impaired.  Tr. at 264.  He admitted to continuing alcohol abuse, and stated at the hearing that he had drunk a 12-pack the night before.  Tr. at 265.  Mr. Baca also told the ALJ that he smokes marijuana daily if he has it.  Tr. at 268.  Although he stated he had been in treatment about a year prior to the hearing, Plaintiff could not remember who sent him for the treatment.  Tr. at 265.  He immediately returned to drinking after the program, but stopped sniffing solvent about seven months before the hearing.  Tr. at 266.

8. Plaintiff also had hepatitis.  He stated that he has not been under a physician's care because he has no money, and that he pays for his beer and cigarettes with odd jobs whenever he can find them, usually two or three times a month.  Tr. at 267, 273.  He will usually make ten or fifteen dollars a day for doing these jobs.  Tr. at 272.

9. Plaintiff stated at the hearing that he has been hearing voices for a while, where he hears talking, but turns around and finds "nobody there." Tr. at 271. He lives with his wife, who does not work. They support themselves with the SSI his wife receives. Tr. at 269.

10. Mr. Baca complains of pain in his knees and neck and uses pain medication that was prescribed for his wife. Tr. at 272. On his application for benefits, Plaintiff stated that he is unable to work because of blurred vision; problems with reading and writing; and memory, concentration, and sleeping problems. Tr. at 68.

11. Plaintiff was examined by three doctors whose medical reports are included in the record. David LaCourt, Ph.D. examined Mr. Baca in October 1997 in a psychological consult. Tr. at 125-28. Dr. LaCourt noted Plaintiff's long history of drinking (since he was 15) and that between 1973 and 1994 he sniffed two cans of pain aerosol daily and smoked two packs of cigarettes a day. Dr. LaCourt noted that Plaintiff had blank periods or substantial gaps in memory. Results from standardized testing revealed mild mental retardation. Dr. LaCourt also diagnosed Plaintiff with dysthmia[4] and cannabis-related disorder.

12. Also in October 1997, Plaintiff was examined by R. Dean Bair, D.O., who diagnosed Plaintiff with knee pain, rib pain upon cough and degenerative joint disease in both knees. Tr. at 149-154. Dr. Bair opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently, stand or walk two hours at a time, and sit for six hours.[5]

---

[4] Dysthmia is a "chronically depressed mood that occurs for most of the day more days than not for at least 2 years." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 345 (4th ed. 1994).

[5] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. §416.967(a) (1986).

13. Plaintiff was examined the following year by Emmett Altman, M.D. to whom Plaintiff reported a history of his knees popping and giving out to where they required manipulation in order to straighten. Plaintiff also complained of neck pain upon yawning, but Dr. Altman reported no objective or orthopedic findings to justify any of these complaints. Tr. at 194.

14. The medical evidence for Mr. Baca's case was reviewed by three state agency physicians. William Hunter, M.D. completed a mental residual functional capacity assessment in November 1997 and opined that Plaintiff had "borderline intelligence." Tr. at 156-59. He noted that Plaintiff was continuing to use marijuana. Dr. Hunter stated that "concentration was a strength in his psychological testing" Tr. at 158-59 and that Plaintiff did not give evidence of problems with social interaction. Although the psychologist felt that Plaintiff's adaptational skills may be "limited by his intelligence and his mood lability," he opined that Plaintiff was able to perform "some type of unskilled labor." Tr. at 159. Dr. Hunter stated that Plaintiff would probably be able to perform even his past work were it not for the "tranquilizing influence" of marijuana, since his impairments were chronic and therefore existed during the time in which he worked.

15. In February 1998, G.W. Sutton, Ph.D, another state agency physician, also reviewed the medical evidence. Dr. Sutton noted that Mr. Baca had weak memory and understanding and minor limits in cognition. However, Dr. Sutton opined that Plaintiff was able to do simple tasks and follow routine instructions. Tr. at 190-193.

16. Another state agency physician, Melvin Golish, M.D., again reviewed the medical evidence about a year later, in March 1998. Tr. at 206. In an RFC assessment, he noted that Mr. Baca could sit, stand, or walk for a total of six hours in an eight hour work day, but that he

5

should avoid walking long distances, long periods of sitting, and bending and squatting due to degenerative joint disease of the knees. Dr. Golish felt that there were no lifting or carrying restrictions.

**First Alleged Error**

17. Plaintiff alleges that the ALJ's listing of impairments is incomplete, and is contrary to the evidence and the law. Plaintiff specifically alleges that the ALJ's analysis is in error because the ALJ did not complete the second prong of listing ¶12.05C.

18. Under listing ¶12.05C (Mental Retardation), a claimant must have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." Based on my review of the ALJ's analysis at step three, I find that the record does not support a finding that Plaintiff's impairments met with the second prong of listing 12.05C and that therefore the ALJ's analysis was legally correct and based on substantial evidence.

19. In this case, the ALJ found that Mr. Baca's impairment met the conditions posed for two other listed impairments, ¶12.09 (Substance Addiction Disorders) and ¶12.04 (Affective Disorders). Tr. at 17. For the former, she found evidence in the record that Plaintiff exhibited the behavioral changes described for listing 12.09A (referring to listing 12.02) as well as the criteria for depression under ¶12.04C, i.e., anhedonia, decreased energy, difficulty sleeping and feelings of worthlessness. The ALJ also found that the (B) criteria for both sections were met: marked impairment in activities of daily living and social functioning, frequent lapses in concentration and repeated episodes of decompensation in a work-like setting. Id.

20. While the ALJ concluded that psychological testing revealed that Mr. Baca's IQ fell

6

within the range required by ¶12.05C, there is no evidence that his hepatitis is an impairment which would constitute a "physical or other mental impairment imposing additional and significant work-related limitation of function" in order to satisfy ¶ 12.05C, as Plaintiff suggests but offers no factual basis from the record to support.

21. Under Tenth Circuit case law, the second prong of § 12.05C requires that "significant limitation" of function for purposes of § 12.05C is one that has more than a slight or minimal effect on the claimant's ability to perform basic work.  While this step requires a "de minimis" showing of impairment, the claimant must show more than the mere presence of a condition or ailment.  See e.g., Hinkle v. Chater, 132 F.3d 1349, 1352 & n.4 (10th Cir. 1997) (citing Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir.1997)).

22. There is no evidence in the record that Plaintiff's hepatitis constitutes such an impairment since there is no evidence that it would interfere with or have a serious impact on the claimant's ability to do basic work activities.  Thus, I find that the ALJ did not commit error in the listing of impairments and that her analysis was neither contrary to the evidence or the law. See Hinkle, 132 F.3d at 1352 (plaintiff's back problems did not meet second prong of 12.05C where restriction on heavy manual labor or overhead work, and poor tolerance for bending and lifting was only minimally disabling and pain was not disabling).

23. Despite findings that Mr. Baca met two listings, the ALJ determined that "claimant would not be disabled if he stopped using drugs and alcohol. . . ," Tr. at 22, thereby concluding that Plaintiff's continued substance abuse contributed to the impairments and to disability. Plaintiff alleges this last finding as error, which I turn to next.

**Second Alleged Error**

24. Plaintiff alleges that the ALJ's finding that Mr. Baca's substance abuse is material to a finding of disability is contrary to the evidence and the law. The ALJ concluded that under grid rule 202.17, Plaintiff was not disabled and that he would be able to work were it not for his alcohol abuse.

25. A claimant is not considered disabled if alcoholism or drug addiction is found to be a contributing factor material to the determination of disability. 42 U.S.C. §423(d)(2)(C). Under social security regulations, a finding of disability requires that the ALJ determine whether the claimant would still be found disabled if the claimant stopped using drugs or alcohol and then determine whether any or all of his remaining limitations would be disabling. If the ALJ determines that the claimant's remaining limitations would not be disabling, then the addiction is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935.

26. Plaintiff argues that the ALJ did not adequately explain the basis for her findings that Plaintiff's continued substance abuse contributed to his impairments and to disability. I agree with this position. The ALJ's decision is unclear on both the first and second prongs of the inquiry: whether or not the ALJ initially found Mr. Baca disabled in the first place and whether or not Plaintiff would be disabled by any of these impairments if he stopped his substance abuse. The main problem is that the ALJ's findings assess Plaintiff's different impairments as a unit rather than attempt to consider them separately in order to determine which ones have the result of rendering him disabled, and which would remain (and still render him disabled) if he stopped drinking.

27. The ALJ seemed to conclude that Mr. Baca was disabled under the first part of the

inquiry ( "claimant is disabled because of a continuous period of drug and alcohol abuse"),[6] Tr. at 15, but other language in the decision suggests that even when considering all of Plaintiff's impairments, he could still perform some jobs, albeit within a reduced range of work.

28.  For example, even considering Plaintiff's "history of hepatitis, mental retardation and depression, solely or in combination with his non-severe impairments," the ALJ determined that Plaintiff could perform light work and relied on the grids to conclude that Mr. Baca was not disabled.  Tr. at 17.   She noted that Plaintiff had the RFC for light work, although his "drug and alcohol abuse significantly reduces the available occupational base."  Tr. at 15.   And later in the decision the ALJ found that Mr. Baca "has the RFC to perform light work, his history of hepatitis and mental retardation and depression reduces his RFC to light work."  Tr. at 21.

29.  The ALJ's findings beg the threshold question of whether Plaintiff is in fact disabled, aside from any effect his substance abuse may have on these impairments.  See 20 C.F.R. § 416.935(a) (Commissioner must first make a determination that the claimant is disabled).  It could be inferred from some of the language in the ALJ's decision that Mr. Baca was still able to perform some light work even with all his impairments, including those which the ALJ felt were a result (at least in part) from Plaintiff's alcohol abuse.

30.  However, despite the medical reports which also suggests that Plaintiff might be able to work in some capacity, the decision regarding his ability to work is not based on substantial evidence, since it leaves unanswered what range of light work and which jobs in this category Plaintiff is able to perform.   The ALJ could have consulted a vocational expert ("VE") for help

---

[6] As discussed above, the ALJ also found that Plaintiff met the requirements for two other listed impairments which would render him disabled.  See ¶ 20, above.

with this determination.

    31.    The ALJ's decision is faulty also with regard to the second prong of the relevant inquiry. The ALJ stated that Plaintiff's various impairments -- depression, mental retardation, problems with stressors and self esteem, coping skills[7] – "result, in whole or in part" from Mr. Baca's drug and alcohol abuse. Tr. at 22. However, this finding does not explain or state, pursuant to 20 C.F.R. § 416.935(b)(2), which nonexertional impairments, if any, would remain if Plaintiff stopped using alcohol and drugs and whether any of these alone or in combination, would be sufficient to preclude work.

    32.    The critical nature of this inquiry is made obvious by Plaintiff's observation that one could not expect Plaintiff's mental retardation to improve if he stopped the substance abuse. Because the ALJ's decision lacks this analysis, I find that it is contrary to law and is not based on substantial evidence.

    33.    Mr. Baca's school problems -- failing grades and dropping out -- coincided with the start of his substance abuse, and at a very young age. The longevity of Mr. Baca's substance abuse may make it difficult to ascertain what impact the abuse has on his various impairments. Cmp., e.g., Adame v. Apfel, 2001 WL 193820, **2 (10th Cir. Kan.), affirming 2000 WL 422341 (D.Kan.) (ALJ's finding that alcohol abuse was a contributing factor to claimant's symptoms of post-traumatic stress disorder was based on substantial evidence where claimant had not reported these symptoms prior to the time he started to abuse alcohol and drugs).

    34.    However, the ALJ is nevertheless required to attempt the analysis. Cmp. Drapeau v.

---

    [7] As mentioned above, the ALJ also found that Plaintiff exhibited symptoms for a depressive syndrome which met the criteria for listing 12.04A: i.e., anhedonia, decreased energy, difficulty sleeping and feelings of worthlessness. Tr. at 17.

Massanari, 2001 WL 694542 *3 (10th Cir. Utah) (ALJ's finding that plaintiff's alcohol abuse was a "material factor" in her disabilities was not supported by evidence in the record where ALJ only indicated that plaintiff's alcohol abuse contributed to her mental condition of depression, and where ALJ failed to address whether plaintiff's alcohol abuse was a "contributing factor" to either plaintiff's post- poliomyelitis or her dysphagia).

35. In sum, I find that the ALJ did not err on Plaintiff's first issue: the ALJ's listing of impairments is complete, and is not contrary to the evidence or the law. However, I find that the ALJ's finding that Mr. Baca's substance abuse is material to a finding of disability is contrary to the evidence and the law. Whether Plaintiff is disabled and what role his substance abuse plays in any disability are questions the Commissioner must address on remand.

## Recommendation

I recommend that Plaintiff's Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for Rehearing **(Doc. 9)** be GRANTED IN PART in that this matter be remanded to the Commissioner to conduct an analysis under 20 C.F.R. §416.935 to determine whether Plaintiff is disabled and what role his substance abuse plays in any disability, consulting a vocational expert if necessary.

_____
UNITED STATES MAGISTRATE JUDGE